UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TODD C. BANK,

                Plaintiff,

        -against-

GOHEALTH, LLC,

                Defendant.
----------------------------------------------------------X

                        **REPORT AND RECOMMENDATION**
                        19 CV 5459 (MKB) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On September 25, 2019, plaintiff Todd C. Bank, proceeding pro se, commenced this action against defendant GoHealth, LLC, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and New York General Business Law ("GBL") § 399-p.  Currently pending before this Court on referral from the Honorable Margo K. Brodie, Chief United States District Judge, is defendant's motion to dismiss the plaintiff's Second Amended Complaint. Also pending before this Court is plaintiff's motion seeking sanctions against defendant's counsel.

For the reasons set forth below, it is respectfully recommended that defendant's motion to dismiss be granted and that plaintiff's motion for sanctions be denied.

FACTUAL BACKGROUND

Plaintiff Bank, an attorney proceeding pro se, brings this action against defendant GoHealth, LLC ("GoHealth"), alleging that defendant is a "lead-generation business" that sells consumer leads to health-insurance agents and brokers.  (Am. Compl.[1] ¶ 17).  According to

---

[1] Citations to "Am. Compl." refer to plaintiff's Second Amended Complaint, filed on February 19, 2020, ECF No. 18.

plaintiff, defendant employs the GoHealth Virtual Marketing Organization, or "GoHealth VMO," to generate leads, through the use of a "BrokerDialer," an "'automatic dialer tool that calls prospects and quality leads.'" (Id. ¶ 19).

Plaintiff alleges that on August 19, 2019, while he was in the Eastern District of New York, he received a telephone call (the "Call") at a residential telephone number, which plaintiff alleges he regularly shared with the subscriber of the phone. (Id. ¶¶ 20, 25-28). According to the Complaint, the caller identification that appeared was "Wireless Caller, xxx-xxx-xxxx," which plaintiff alleges was fabricated. (Id. ¶¶ 21, 22). Plaintiff alleges that the caller identification was made to appear as if the call was a local call, in order to cause the person receiving the call to be more likely to answer it, a practice alleged to be called "neighborhood spoofing." (Id. ¶¶ 23, 24). Plaintiff claims that when he answered the Call, a voice that sounded "robotic," claimed to offer discounts for "Medicare Supplement," also called "Medigap." (Id. ¶¶ 29, 30).

Plaintiff attempted to speak to the voice, but it did not respond. (Id. ¶ 31). According to plaintiff, after the recording was played, plaintiff was transferred to an individual who identified himself as "Jason." (Id. ¶ 34). When plaintiff told Jason that he had Medicare Parts A and B, he was transferred to another individual who identified himself as "Marc." (Id. ¶ 36). After plaintiff gave Marc a fake name, he was transferred to a "licensed agent," and while on hold waiting for the transfer, a recording indicated that he might be placed in touch with an agent "who is not affiliated with GoHealth to reduce your weight." (Id. ¶¶ 39, 40, 41). The message gave GoHealth's number and indicated that if the caller wished to be placed on GoHealth's do-not-call list, the caller should contact that number, which plaintiff alleges is GoHealth's phone number. (Id. ¶¶ 41, 42).

The Complaint further alleges that after a minute on hold, a third live person named Jared came on the phone and told plaintiff that he was a licensed agent of GoHealth. (Id. ¶¶ 45, 54). Jared took plaintiff's email address and, approximately one minute after the Call ended, plaintiff received an email from Jared. (Id. ¶¶ 53, 60, 61). On August 19, 2019, plaintiff sent an email to Jared asking how he had gotten plaintiff's number, to which Jared replied that plaintiff must have filled out something online. (Id. ¶¶ 62-64).

Plaintiff seeks to represent two separate classes of similarly situated persons – the "New York Class," which encompasses a period beginning three years prior to the commencement of this action, and the "Federal Class," which encompasses a period beginning four years prior to the commencement of this action. Plaintiff alleges that during the respective class periods, GoHealth initiated numerous telephone calls to residential telephones, using a prerecorded voice to encourage the purchase of services provided by GoHealth. (Id. ¶ 65). Plaintiff alleges that there was no written consent given prior to these telephone calls being made. (Id. ¶ 67). Plaintiff further alleges that the calls were made using equipment designed to disseminate a prerecorded message without the use of an operator. (Id. ¶ 68). The recorded message did not state the name, address, or phone number of the person on whose behalf the calls were placed. (Id. ¶¶ 69-71).

The Complaint alleges two causes of action: 1) a claim for statutory and injunctive relief on behalf of the Federal Class, based on GoHealth's alleged violation of 47 U.S.C. § 227(b)(1) (First Cause of Action); and 2) a claim for damages and injunctive relief on behalf of the New York Class, based on GoHealth's alleged violation of New York General Business Law § 399-p(3)(a) (Second Cause of Action). (Id. ¶¶ 72-81).

3

PROCEDURAL HISTORY

Following the commencement of this action on September 25, 2019, defendant requested a pre-motion conference on November 22, 2019, seeking permission to file a motion to dismiss or strike certain allegations in plaintiff's Complaint.  (ECF No. 12).  Thereafter, during the course of briefing the motion, plaintiff filed an Amended Complaint on February 5, 2020 attempting to address certain deficiencies in the pleadings.  (ECF No. 16).  On February 19, 2020, plaintiff filed a second Amended Complaint (ECF No. 18), which is the operative pleading at issue in this motion to dismiss.

Defendant moves to dismiss the plaintiff's Second Amended Complaint on several grounds.  First, defendant contends that plaintiff lacks standing to bring a claim under the Telephone Consumer Protection Act; and second, that the Complaint fails to state a plausible claim under the TCPA.  With respect to the claim asserted under the GBL, defendant argues that the claim is conclusory, plaintiff lacks standing to bring a GBL claim, and, in any event, the Court should decline to exercise jurisdiction over the state law claim if the TCPA claim is dismissed.

DISCUSSION

I.    Defendant's Motion to Dismiss for Lack of Standing

A.  Legal Standard:  Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendant moves to dismiss plaintiff's Second Amended Complaint for lack of federal subject matter jurisdiction, arguing that plaintiff fails to plead facts sufficient to establish Article III standing.

In determining whether there is subject matter jurisdiction over a claim, the court must examine whether the complaint states "a right to recover under the laws of the United States." Goldman v. Gallant Sec., Inc., 878 F.2d 71, 73 (2d Cir. 1989) (per curiam) (citing Bell v. Hood, 327 U.S. 678, 681 (1946)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 386-86 (E.D.N.Y. 2007).

When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court must "accept as true all material factual allegations in the complaint." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted); see also Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d at 387; Country Rock Cafe, Inc. v. Truck Ins. Exch., 417 F. Supp. 2d 399, 402 (S.D.N.Y. 2006). While the court will "'draw all reasonable inferences in favor of plaintiff,'" Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d at 387 (quoting Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (quoting Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000))), the plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Makarova v. United States, 201 F.3d at 113; Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

In analyzing subject matter jurisdiction under Rule 12(b)(1), the court must "give the plaintiff's factual allegations closer scrutiny" than it would in the context of a motion to dismiss pursuant to Rule 12(b)(6), "[b]ecause subject-matter jurisdiction focuses on the court's power to hear the claim." Physicians Comm. For Responsible Med. v. U.S. Envtl. Prot. Agency, 451 F. Supp. 2d 223, 228 (D.C. Cir. 2006) (citing cases). The court is "not limited to the allegations

contained in the complaint," id. at 228, and may consider materials outside the pleadings to

resolve disputed jurisdictional facts.  Makarova v. United States, 201 F.3d at 113; Country Rock

Café, Inc. v. Truck Ins. Exch., 417 F. Supp. 2d at 402.  See also Coalition for Underground

Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (holding that a court may "consider the

complaint supplemented by undisputed facts evidenced in the record, or the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts").

### 1.  Article III Standing

One component of the Article III jurisdictional limit of federal courts to decide "cases" or

"controversies" is the concept of standing.  Alliance For Envtl. Renewal, Inc. v. Pyramid

Crossgates Co., 436 F.3d 82, 85 (2d Cir. 2006).  "The Supreme Court has called Article III

standing 'perhaps the most important' of the case-or-controversy doctrines placing limits on

federal judicial power."  Id. (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)).  A district

court must "generally resolve material factual disputes and establish that it has federal

constitutional jurisdiction, including a determination that the plaintiff has Article III standing,

before deciding a case on the merits."  Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates

Co., 436 F.3d at 85 (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)).

Challenges to standing are properly brought as a motion under Rule 12(b)(1), rather than a

motion for dismissal under Rule 12(b)(6) because a determination that there has been a failure to

state a claim "is an adjudication on the merits with preclusive effect."  Id. at 88, n.6 (citing

cases).

Defendants may make a facial challenge to the plaintiff's Article III standing that accepts

the jurisdictional facts pleaded, but contests their sufficiency, or they may make a factual

challenge, in which case the court has "leeway as to the procedure it wishes to follow."  Id. at 88

(citing <u>Gibbs v. Buck</u>, 307 U.S. 66, 71-72 (1939) (holding "[a]s there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court")).

The procedural posture of the case determines the standard by which the court assesses challenges to standing.  Here, the defendant has raised a facial challenge to the sufficiency of plaintiff's pleadings.  Given that there has been no discovery and no evidence presented in connection with the standing question, the Court "presume[s] the general factual allegations embrace those facts necessary to support the claim, . . . and [is] constrained not only to accept the truth of the plaintiffs' jurisdictional allegations, but also to construe all reasonable inferences to be drawn from those allegations in plaintiffs' favor."  <u>Connecticut v. American Elec. Power Co., Inc.</u>, 582 F.3d 309, 333 (2d Cir. 2009), <u>rev'd on other grounds</u>, 131 S. Ct. 2527 (2011) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>Warth v. Seldin</u>, 422 U.S. 490, 501-02 (1975); <u>Robinson v. Gov't of Malaysia</u>, 269 F.3d 133, 140 (2d Cir. 2001)).

In order to assert standing, a plaintiff must demonstrate that he

> suffered an 'injury-in-fact'– an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Lee v. Board of Governors of the Fed. Res. Sys.</u>, 118 F.3d 905, 910 (2d Cir. 1997) (quoting <u>Bennett v. Spear</u>, 520 U.S. 154, 167 (1997)).  <u>See also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560-61.  "To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized' as well as 'actual or imminent, not "conjectural" or "hypothetical."'"  <u>Baur v. Veneman</u>, 352 F.3d 625, 632 (2d Cir. 2003) (citing <u>Lujan v. Defenders</u>

of Wildlife, 504 U.S. at 560).  In evaluating whether a plaintiff alleges injury sufficient to confer

standing, courts are concerned with whether the "injury 'affect[s] plaintiff in a personal and

individual way' . . . to avoid having the federal courts serve as 'merely publicly funded forums

for the ventilation of public grievances or the refinement of jurisprudential understanding.'"  Id.

(citing Lujan v. Defenders of Wildlife, 504 U.S. at 560 n.1; Valley Forge Christian College v.

Americans United for Separation of Church & State, 454 U.S. 464, 473 (1968)).


## 2.  The TCPA

Plaintiff's Complaint asserts federal jurisdiction under the TCPA, which bans certain

"invasive telemarketing practices."  The TCPA was passed in 1991 to address complaints by

consumers that telemarketers were using technology, such as computerized phone calls to private

homes, and escaping state law protections against nuisance calls by operating interstate.  Mims v.

Arrow Fin. Servs., LLC, 565 U.S. 368 (2012).  The Act authorizes private individuals to bring

claims for violations of the Act or regulations "'in an appropriate court of [a] State,'" "'if [such

an action is] otherwise permitted by the laws or rules of court of [that] State.'"  47 U.S.C. §§

227(b)(3), (c)(5).  Federal courts have subject-matter jurisdiction over TCPA claims pursuant to

28 U.S.C. § 1331.  Mims v. Arrow Fin. Servs., LLC, 565 U.S. at 386-87.

Section 227(b)(1)(B) makes it unlawful for any person "to initiate any telephone call to

any residential telephone line using an artificial or prerecorded voice to deliver a message

without the prior express consent of the called party, unless the call is initiated for emergency

purposes. . . ."  47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).  The statute provides that

for each proven violation, the plaintiff may recover the greater of the monetary loss caused by

the violation or $500, unless the plaintiff can demonstrate that the violations are willful, in which

case the plaintiff may recover up to $1,500. 47 U.S.C. § 227(b)(3). Although "claims based on alleged violations of the TCPA need not be pled with particularity," Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (citing McCabe v. Caribbean Cruise Line, Inc., No. 13 CV 6131, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014)), the plaintiff must still allege facts sufficient to state a plausible claim of direct liability for a violation of the TCPA.

    B. <u>Analysis</u>

        1. <u>Injury-in-Fact</u>

In moving to dismiss plaintiff's TCPA claim for lack of Article III standing, defendant argues that plaintiff has failed to allege facts demonstrating an injury-in-fact traceable to GoHealth or that would be redressable by a favorable outcome in this case. (Def.'s Mem.[2] at 7-10, 18-19). Defendant argues that plaintiff has not alleged that he sustained any harm, and is seeking only legal fees, statutory damages, and injunctive relief. (Id. at 9). Defendant further argues that any "purported injury was self-inflicted" because he answered a phone that did not belong to him. (Id. at 9). Defendant argues that Bank's decision to remain on the phone speaking with multiple people before being transferred to a GoHealth employee is not enough to establish injury-in-fact. (Id. (citing Bank v. CreditGuard of America, No. 18 CV 1311, 2019 WL 1316966, at *11 (E.D.N.Y. Mar. 22, 2019)).[3]

---

[2] Citations to "Def.'s Mem." refer to defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint, filed June 5, 2020, ECF No. 25.

[3] In <u>Bank v. CreditGuard of America</u>, 2019 WL 1316966 at *11, Judge Chen dismissed plaintiff's state law claims because she found he had not sufficiently alleged injury-in-fact to sustain a GBL claim. In that case, the defendants did not seek dismissal of the TCPA claims on standing grounds, and those claims were preserved after the court found that plaintiff plausibly alleged TCPA violations. Id. at *9; <u>see</u> discussion <u>infra</u>.

Plaintiff argues that he has suffered an injury-in-fact and relies on the decision in Leyse

v. Lifetime Entertainment Services, LLC, where the Second Circuit held that the injury

requirement of Article III standing was satisfied when the defendant left a prerecorded voicemail

message which the plaintiff listened to on a device where the plaintiff resided and had legitimate

access. (Pl.'s 1st Opp.[4] at 12 (citing Leyse v. Lifetime Entm't Servs., LLC, 679 F. Appx. 44, 46-

47 (2d Cir. 2017)). Similarly, in Melito v. Experian Mktg. Sols., Inc., the Second Circuit found

that plaintiffs' "receipt of the unsolicited text messages, sans any other injury, is sufficient to

demonstrate injury-in-fact" under the TCPA.  923 F.3d 85, 88 (2d Cir. 2019).  The court

reasoned that the unwanted messages presented "the same 'nuisance and privacy invasion'

envisioned by Congress when it enacted the TCPA."  Id. at 93 (quoting Pub. L. No. 102-243 §§

5,12).  Since the harms Congress envisioned were closely related to harms remediable by

traditional causes of action, the court concluded that the plaintiffs did not need to allege any

further harm beyond receipt of the call.  Id. at 93-94 (concluding, "the receipt of unwanted

advertisements *is itself* the harm (emphasis in original)); see also Fischer v. Verizon New York,

Inc., No. 18 CV 11628, 2019 WL 2265039, at *2 (collecting cases that, "applying Leyse, have

similarly held that the receipt of unauthorized, prerecorded phone calls is sufficient to confer

standing to bring suit under the TCPA").

---

[4] Citations to "Pl.'s 1st Opp." refer to plaintiff's first Memorandum in Opposition to the Motion to Dismiss Plaintiff's Federal Cause of Action, filed as an unmarked attachment to plaintiff's response in opposition to defendant's motion to dismiss, ECF No. 28.  The Court notes that plaintiff has addressed each of defendant's three requests for relief in a separate brief, arguing that each request constitutes a separate motion.  (Pl.'s 1st Opp., cover page).  This strained interpretation would lead to absurd results if accepted by the Court, as it would multiply the number of pages allowed potentially into the hundreds on typical motions, and have the effect of constraining movants to a much smaller page limit than non-moving parties.  Defendant requests that, as plaintiff's 33 pages of briefing exceed the court's 25-page limit, the briefs should be stricken in their entirety or disregarded with respect to the pages after page 25.  (Defendant's Reply in Support of its Motion to Dismiss ("Def.'s Reply"), cover page, n.1).  Although the Court declines to follow this course of action at present, plaintiff is warned that this approach is not appropriate and in the future, the Court will recommend striking plaintiff's submissions to the extent that they fail to comply with the court's rules.

Consequently, because the plaintiff here has alleged that he received an unsolicited robocall, he has sufficiently alleged an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.

### 2.  Traceability and Redressability

Defendant, however, also challenges plaintiff's Article III standing by arguing that plaintiff has failed to allege facts showing that the alleged injury can be fairly traced to GoHealth.  (Id. at 9 (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125 (2014))).  Defendant contends that the Amended Complaint fails to plead facts showing conduct directly or indirectly attributable to GoHealth, fails to plead any basis for concluding that the call was initiated by an agent of GoHealth, and fails to plead that there is any relationship between GoHealth and the third party that initiated the call.  (Id. at 9 (citing Holland v. JPMorgan Chase Bank, N.A., No. 19 CV 00233, 2019 WL 4054834, at *7 (S.D.N.Y. Aug. 28, 2019))).  Defendant notes further that there is no allegation as to what control, if any, GoHealth had over the party that initiated the call.  (Def.'s Mem. at 9).  Finally, defendant contends that because plaintiff has not alleged facts showing any conduct attributable to GoHealth, he cannot establish redressability; "imposing damages on GoHealth will not prevent the purported unlawful conduct of any of the unidentified third parties who allegedly placed the call."  (Id. at 10).

Plaintiff does not allege that the initial Call identified the organization or person on whose behalf the call was placed.  (Am. Compl. ¶¶ 29-31).  In fact, he alleges that the caller's identity was concealed through a disguised phone number.  (Id. ¶¶ 21-24).  However, he alleges that he was subsequently transferred to a person who identified himself as an agent of GoHealth.  (Id. ¶ 45).  He also alleges that during the course of the call, there was an automated message

instructing him to call a phone number associated with GoHealth if he wished to be placed on GoHealth's do-not-call list.  (Id. ¶¶ 41-42).

These allegations differ from the circumstances in the case relied upon by defendant, Holland v. J.P. Morgan Chase Bank, N.A.  In that case, the plaintiff alleged claims against two legally distinct entities but provided no basis for an inference that both were responsible for plaintiff's injury.  2019 WL 4054834, at *8.  Here, while the allegations against GoHealth may not be enough to eventually establish liability on the part of GoHealth (see discussion infra), they suffice to allege that plaintiff's injury is traceable to the defendant and, if proven, make it likely that the injury would be redressable if there were a favorable outcome in the case.

Having considered the allegations in the Complaint, the Court concludes that plaintiff has adequately alleged facts that qualify as an "injury-in-fact" sufficient to confer constitutional standing.


II.     Motion to Dismiss for Failure to State a Claim

        A. Legal Standard Under Rule 12(b)(6)

In addition to challenging plaintiff's Article III standing to bring this action, defendant also moves to dismiss plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that plaintiff has failed to adequately allege specific facts necessary to "state a claim to relief that is plausible on its face."  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  (Defs.' Mem. at 7).

When deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Second Circuit has stated that a court must "accept

as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); see also Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007), cert. denied, 553 U.S. 1093 (2008).  In addition, the court must give plaintiff's claims "a liberal construction."  Johnson v. New York City Transit Auth., 639 F. Supp. 887, 891 (E.D.N.Y. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), aff'd in part and vacated in part on other grounds, 823 F.2d 31 (2d Cir. 1987).  However, the court is not required to accept the truth of legal conclusions couched as factual allegations.  See Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal, the Supreme Court clarified the pleading standards under which courts are to evaluate a motion to dismiss, "arguably shift[ing] pleading standards from 'simple notice pleading' to a 'more heightened form of pleading.'"  Barbosa v. Continuum Health Partners, Inc., 716  F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  Now, when deciding a Rule 12(b)(6) motion to dismiss, the court should consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678; see also Hayden v. Paterson, 594 F.3d 150, 160-61 (2d Cir. 2010).  Under this heightened pleading standard, labels, conclusions, and mere recitation of the elements of a cause of action will not suffice.  Ashcroft v. Iqbal, 556 U.S. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. at 545.  Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level."

Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  However, "plausibility" does not rise to the level

of probability but instead requires "'more than a sheer possibility that a defendant has acted

unlawfully.'"  Barbosa v. Continuum Health Partners, Inc., 716  F. Supp. 2d at 215 (quoting

Ashcroft v. Iqbal, 556 U.S. at 678).  "The issue is not whether a plaintiff will ultimately prevail

but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes,

416 U.S. 232, 236 (1974); see also Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d

Cir. 1995), cert. denied, 519 U.S. 808 (1996).  Ultimately, when the well-pleaded facts allow no

more than an inference of a "mere possibility of misconduct" and plaintiff has only alleged,

rather than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not

been satisfied.  Ashcroft v. Iqbal, 556 U.S. at 679.

       As a general matter, while a pro se litigant's pleadings "'are held to less stringent

standards than formal pleadings drafted by lawyers,'"  Oyekoya v. United States, 108 F. Supp.

2d 315, 317 (S.D.N.Y. 2000) (quoting Santiago v. Meinsen, 89 F. Supp. 2d 435, 438 (S.D.N.Y.

Feb. 25, 2000)), in this case, plaintiff  is in fact an attorney.  Thus, while the Court is mindful that

"'when [a] plaintiff proceeds pro se. . .a court is obliged to construe his pleadings liberally,'"

Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (quoting McEachin v.

McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)), in this case, the court analyzes the pleadings with

the understanding that as a licensed attorney, Mr. Bank is not afforded the special latitude

afforded to pro se plaintiffs who are not attorneys. See Bank v. U.S. Dep't of Health & Human

Servs., 708 F. App'x 43, 44 (2d Cir. 2018); see also Bank v. Vivint Solar, Inc., No. 18 CV 2555,

2019 WL 1306064, at  n. 1 (E.D.N.Y. March 22, 2019).

B. <u>Analysis</u>

1. <u>Statutory Standing Under the TCPA</u>

In addition to challenging plaintiff's standing under Article III, defendant also argues that plaintiff lacks statutory standing under the TCPA because he was not the subscriber of the phone and was not the "called party." (Def.'s Mem. at 10-14). This question is properly analyzed under Rule 12(b)(6). <u>See</u> <u>Am. Psychiatric Ass'n v. Anthem Health Plans</u>, 821 F. Supp. 3d 352, 359 (2d Cir. 2016) (explaining that "'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" (quoting <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 127 (2014)).

Specifically, GoHealth argues that under the TCPA, a violation occurs when an artificial or prerecorded voice is used to deliver a message to a residential telephone "without the prior express consent of the *called party*." (<u>Id.</u> at 11 (quoting 47 U.S.C. § 227(b)(1)(B) (emphasis added)). Conceding that the term "called party" is not defined in the statute, defendant cites the regulations of the Federal Communications Commission ("FCC"), which define "called party" as "best understood to mean the subscriber to whom the dialed [ ] number is assigned." 30 FCC Rcd. 7961, 8000-01 (July 10, 2015).

Defendant argues that plaintiff is not the subscriber to the phone and has "concede[d] his claim is based on a single call to a residential phone line that does not belong to him, and in fact, belongs to his mother." (Def.'s Mem. at 8 (citing Am. Compl. ¶¶ 26-27 (admitting that plaintiff was not the subscriber of the phone line); McGuinness Decl.,[5] Ex. C at 2 (conceding that "The telephone line at issue belongs to my mother"); Ex. E at 3 (same)). Since Bank is not the subscriber to the phone, defendant argues that he cannot claim an invasion of his own privacy

---

[5] Citations to "McGuinness Decl." refer to the Declaration of John W. McGuinness in Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 27.

interests or that he had any expectation of privacy in his mother's landline phone.  (Def.'s Mem. at 8).[6]

Although Bank concedes that he is not the subscriber to the phone, he contends that standing is not limited to the "called party" but includes persons within the zone of interests the TCPA was intended to protect.  (Pl.'s 1st Opp. at 2 (citing Owens v. Starion Energy, Inc., No. 16 CV 1912, 2017 WL 2838075, *7 (D. Conn. June 30, 2017))).  He argues that Section 227(b)(3) of the TCPA confers a private right of action upon "[a] person," and is not limited to 'subscribers' or 'called parties.'  (Id.)  Citing the Third Circuit's decision in Leyse v. Bank of America, plaintiff argues that  he has standing under the TCPA because he "was within the zone of interests the TCPA protects as a 'regular user of the phone line and occupant of the residence that was called.'"  (Id. at 3 (quoting Leyse v. Bank of America, 804 F.3d 316 (3d Cir. 2015))).  In the Amended Complaint, plaintiff acknowledges that while he is not the subscriber to the phone that was called, he "regularly shared [the phone number] with the subscriber."  (Am. Compl. ¶ 27).  In his Memorandum in Opposition to the Motion to Dismiss, he elaborates on this fact, asserting that he spends "approximately one-third of his time at his mother's residence, during which, discovery would show, he has the authority to treat his mother's telephone line as his own."  (Pl.'s 1st Opp. at 3).

---

[6] In response, Bank first takes issue with defendant's assertion that the phone belonged to his mother, arguing that nowhere in the Amended Complaint does Bank assert that. (Pl.'s 1st Opp.) at 1). Arguing that under Rule 12(b)(6), the Court is limited to review of the allegations in the Complaint and may not consider evidence beyond the record, Bank contends that the letters cited by defendant in which Bank concedes that the phone belongs to his mother are not properly considered by the Court.  (Id.) Nevertheless, after raising this objection, Bank states in his papers that he "waives his right to object to the Court's consideration of those letters with respect to the Rule 12(b)(1) branch of the motion as well as the Rule 12(b)(6) branch, as discovery would show that Bank's statements are accurate, i.e., that he spends 'approximately one-third of the time at his mother's residence.'"  (Id.)  Although the Court would not ordinarily look beyond the facts alleged in the pleadings, since plaintiff has "waived his right" to such a constraint, the Court will, in the interest of judicial efficiency, consider the facts as plaintiff has stipulated them.

The regulations relied upon by defendant to argue that plaintiff cannot claim to be the "called party," recognize that individuals who are not the official subscriber may be considered the "called party" when, "due to the relationship to the subscriber, [they] are the number's customary user." 30 FCC Rcd. 7961, 8000-01 (Jul. 10, 2015). Thus, in Duran v. La Boom Disco, Inc., the court found that the non-subscriber plaintiff was a customary user where he had a phone on a family plan subscribed to by his mother. 369 F. Supp. 3d 476, 481 (E.D.N.Y. 2019), vacated and remanded on other grounds, No. 19 CV 600, 2020 WL 1682773 (2d Cir. Apr. 7, 2020); see also Rodriguez v. Premier Bankcard, LLC, No. 16 CV 2541, 2018 WL 4184742, at *1 (N.D. Ohio Aug. 31, 2018) (finding the wife was a customary user of the phone subscribed to by her husband where the account provided each spouse with a phone). Similarly, in Leyse, the case relied upon by plaintiff, roommates shared a landline. When one roommate answered a prerecorded call intended for the other roommate, the Third Circuit held that the answering roommate was a "called party" for purposes of the TCPA because he fell within the zone of interest protected by the statute. Leyse v. Bank of America Nat. Ass'n, 804 F.3d at 326. The court noted that by contrast, a visitor or mere guest who picked up the phone would not be considered within the zone of interests protected by the TCPA. See id.

Thus, if plaintiff can establish that due to his relationship with the subscriber of the phone, he was a customary user of the phone, he may fall within the zone of interest protected by the TCPA. Bank has alleged that, at the time of the Call, he "had regularly shared the Receiving Number with the subscriber of the Receiving Number." (Am. Compl. ¶ 27). This allegation seems to satisfy the bare minimum required in order to allege that plaintiff has standing under the TCPA.

Plaintiff also disputes GoHealth's argument regarding the issue of consent.  Under 47 U.S.C. § 227(b)(1)(B), robocalls are unlawful except those that are made with the "prior express consent of the called party."  Defendant argues that, because the line belonged to Bank's mother, his mother was the one with authority to consent, and therefore Bank cannot state a claim as an unconsenting called party.  (Def.'s Mem. at 12-13).

Plaintiff points to the assertion in the Amended Complaint that "Bank, based upon his use of the Receiving Number, had the legal authority to give consent to the placement, to the Receiving Number, of telephone calls that, solely as a result of that consent, would not violate the TCPA."  (Pl.'s 1st Opp. at 5 (citing Am. Compl. ¶ 28)).  Thus, plaintiff argues that because he resides at his mother's home approximately one-third of the time, he had the authority to consent and therefore consent by either plaintiff or his mother would have been a defense regardless of who the plaintiff was.  (Id. at 4-5 (citing Duran v. La Boom Disco, Inc., 369 F. Supp. 3d 476, 481 (E.D.N.Y. 2019) (holding that "called party" includes individuals who, "due to their relationship to the subscriber, are the number's customary user and can provide express consent for the call"))).  Plaintiff again relies on the holding in Leyse to argue that being the called party does not impact who may bring a lawsuit, nor does conferring standing on others beside the subscriber raise the specter that such conferral of standing would subject businesses to liability to any individual who answers the phone.  (Id. at 4 (citing Leyse v. Bank of America Nat. Ass'n, 804 F.3d at 327)).

Defendant, however, argues that the question is not whether plaintiff could have conferred consent, but rather whether his mother did confer consent.  (Def.'s Mem. at 12).  GoHealth argues that because the phone was subscribed to in plaintiff's mother's name, and assuming the allegations in the Amended Complaint are true, "it is no wonder then that the caller did not seem

to have 'any idea who Bank was nor that Bank was the person who answered the call,'" noting

that the call intercepted by Bank was regarding a Medicare supplement intended for his mother.

(Def.'s Mem. at 12-13).  In response, Bank argues that the prerecorded voice did not indicate a

desire to speak to anyone in particular and even when the first live person came on the phone,

that person did not ask to speak to Bank's mother.  (Pl.'s 1st Opp. at 7).[7]

    The Court finds the consent arguments to be immaterial to the facts at hand.  Plaintiff

pleads that "The GoHealth Telephone Calls were not preceded by the written consent of anyone

who had the legal authority to provide such consent."  (Am. Compl. ¶ 67).  Whether plaintiff, his

mother, or both of them had such authority, plaintiff plausibly alleges that no consent for the call

was given by anyone.

    Considered as a whole, plaintiff's Complaint alleges something less than the facts that

courts have previously found to support statutory standing under the TCPA.  Unlike the parties in

Duran, where the plaintiff's personal phone was part of a family plan, or Rodriguez, where the

husband and wife each had a phone as part of a single shared account, cf. Duran v. La Boom

Disco, Inc, 369 F. Supp. 3d at 481; Rodriguez v. Premier Bankcard, LLC, 2018 WL 4184742, at

*1, plaintiff's relationship to his mother's phone would seem to be closer to that of  a roommate.

However, unlike the plaintiff in Leyse, who was called on a land line that was shared with a full-

time roommate, plaintiff concedes that he stays with his mother only one-third of the time. He

---

[7] Defendant also argues that plaintiff is not within the zone of interests that the TCPA is intended to protect, but instead is a "serial litigant" who intentionally answered the phone to manufacture standing. (Def.'s Mem. at 13 (citing Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 801 (W.D. Pa. 2016))).  Plaintiff disputes this characterization and argues that this case is distinguishable from Stoops where the plaintiff purchased nearly 40 cellphones in the hope of receiving a large number of calls in violation of the TCPA.  (Pl.'s Mem. at 10).  By contrast, plaintiff argues that his mother's phone was not maintained for the sole purpose of filing lawsuits.  (Id. at 10-11).  While plaintiff has filed numerous TCPA cases, Stoops is  distinguishable and therefore, the Court has not considered the arguments regarding plaintiff's supposed motivation persuasive.

also is less than a co-subscriber; he does not allege that he pays for the telephone line or that the line is connected to another one that he pays for. Based on his allegations, he could be seen as more akin to a "visitor or mere guest," albeit a frequent one. Leyse v. Bank of America Nat. Ass'n., 804 F.3d at 326. As such, he would not have a privacy interest in his mother's home, and there would be no interest to protect against intrusion. Whether the time that plaintiff spent at his mother's house was of a quantity and nature such that he was a "customary user" appears to be a question of fact that it would be inappropriate to decide at this stage, in light of his allegation that he "regularly shared" the telephone line with the subscriber. Accordingly, the Court respectfully recommends a finding that he has plausibly alleged statutory standing under the TCPA.

### 2. Direct or Vicarious Liability

Defendant also urges the Court to dismiss plaintiff's TCPA claims for failing to state a claim for direct liability on the part of GoHealth. (Def.'s Mem. at 14). Specifically, defendant argues that in order to hold the defendant directly liable under the TCPA, there must be an allegation that defendant either made or initiated the call. (Id. (citing In the matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (stating that there must be a "direct connection" between the person or entity and the making of the call))). Under Section 227(b)(1), a plaintiff seeking to impose direct liability against a defendant must allege that the defendant initiated the unsolicited call. See Banks v. Pro Custom Solar, No. 17 CV 613, 2018 WL 3637960 (E.D.N.Y. July 31, 2018) (finding that Mr. Bank had "fail[ed] to allege that Defendant initiated the Calls, which is required to successfully plead direct liability"). In Bank v. Vivint Solar, Inc., the court dismissed a similar direct liability claim brought by this same plaintiff, finding that there was "an insufficient

basis upon which to infer that [defendant] made the [initial call]." 2019 WL 2280731, at *3 (E.D.N.Y. Feb. 25, 2019), adopted by, 2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019).

Defendant argues that there must be a "direct connection" between the person or entity and the making of the call before there can be direct TCPA liability. (Def.'s Mem. at 14 (citing In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015))). Defendant notes that Bank has previously had a case dismissed for failure to allege sufficiently the direct connection. (Id. at 14-15 (citing Bank v. Vivint Solar, 2019 WL 2280731, at *3)). See also Childress v. Liberty Mut. Ins. Co., No. 17 CV 1051, 2018 WL 4684209, at *1 (D.N.M. Sept. 28, 2018); Melito v. American Eagle Outfitters, Inc., No. 14 CV 2440, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015). Defendant argues that plaintiff not only failed to allege that GoHealth physically placed the call to him, but Bank also failed to include any factual allegations that tie GoHealth to the alleged calls made to the rest of the putative class. (Def.'s Mem. at 16).

Plaintiff does not contest GoHealth's argument that he has failed to state a claim for direct liability, but maintains that the Amended Complaint states a claim on a theory of vicarious liability. (Pl.'s 1st Opp. at 12). Citing to the regulatory definition of "seller," plaintiff argues that a "seller" is the "person or entity on whose behalf a [telemarketing] call or message is initiated," 47 C.F.R. 64.1200(f)(9), and a "telemarketer" is "the person or entity that initiates a [telemarketing] call." 47 C.F.R. 64.1200(f)(11). (See Pl.'s 1st Opp. at 13). Even when the seller does not initiate the call, it may be held vicariously liable for certain third-party telemarketing calls initiated by the third party. See DISH Network LLC Declaratory Ruling, 28 FCC Rcd. 6574, 6583 (2013); see also Bank v. Vivint Solar, Inc., 2019 WL 1306064, at *3 (noting that the FCC has "ruled that, under federal common-law principles of agency, there is

vicarious liability for TCPA violations"); McCabe v. Caribbean Cruise Line, Inc., 2014 WL 3014874 at *3 (finding that "traditional principles of vicarious liability apply to actions brought under the TCPA"). Specifically, plaintiff grounds his vicarious liability allegations on the agency concept of "apparent authority." (Pl.'s 1st Opp. at 13).

To the extent that Bank is alleging vicarious liability, GoHealth argues that plaintiff has failed to allege an agency relationship between the maker of the call and GoHealth. (Id. (citing Bank v. Vivint Solar, Inc., 2019 WL 2280731, at *3 (holding that the "plaintiff asserting vicarious liability in a TCPA action 'must allege an agency relationship between' the maker of the call. . .and the defendant"); Melito, 2015 WL 7736547, at *4-5 (holding that a plaintiff "must allege some facts regarding the relationship between an alleged principal and agent. . .and cannot simply allege general control in a vacuum").

Here, plaintiff's Amended Complaint brings claims against GoHealth, but concedes that the phone number that called the residential line was not a GoHealth number, but rather was a "Wireless Caller," which plaintiff alleges was "fabricated." (Am. Compl. ¶¶ 21, 22). Plaintiff further alleges that later in the conversation with the third live person to whom he was transferred, he obtained a different telephone number for GoHealth that was given by a person he alleges was a GoHealth employee. (Am. Compl. ¶¶ 47-48). There are no allegations in the Amended Complaint that the prerecorded call disclosed either the name or address of GoHealth or any other entity on whose behalf the call was made. Unlike the circumstances in Pro Custom Solar, 2018 WL 3637960, where the caller was sent directly from the robocall to a live representative who confirmed that the call was to promote defendant's services, here plaintiff does not allege that anyone at any time confirmed that the Call was initiated by or made on behalf of GoHealth. See also Bank v. Vivint Solar, Inc., 2019 WL 2280731 at *2. The

22

Complaint does not allege that either of the two individuals to whom plaintiff was transferred before he spoke to the GoHealth employee claimed to be calling on behalf of GoHealth. He was transferred twice to two other individuals, "Jason" and "Marc" before speaking to a purported representative of GoHealth, but there are no allegations in the Complaint that either of these individuals were GoHealth agents, nor does he allege any facts to show that the original call had any connection to GoHealth. (Am. Compl. ¶¶ 34, 36, 43, 69-71). By contrast, in <u>Bank v. CreditGuard of America</u>, the plaintiff alleged that the defendant whose employee he ultimately spoke with "maintained a commingled business relationship," and "share[d] a single place of business" with the defendant he was initially transferred to, which the court found supported a "reasonable inference that each . . . [d]efendant acted with the apparent authority" of the others. 2019 WL 1316966, at *9. In the absence of any allegation that the call was initiated by an agent of GoHealth or any allegations whatsoever as to who made the Call, there is no basis on which to determine that the caller was an agent of GoHealth. (Am. Compl. ¶¶ 20-29).

Where, as here, there are no factual allegations on which to base an agency relationship between GoHealth and the caller, courts have dismissed complaints. For example, in <u>Jackson v. Caribbean Cruise Line, Inc.</u>, the plaintiff alleged that he received text messages sent by a marketing company on behalf of the defendant. 88 F. Supp. 3d at 133. To establish the liability of the second defendant, the plaintiff pled that the defendant was "responsible for making or causing the making of" the messages, "contracted with" the marketing firm to send the text messages, and that the marketing firm "sent the text message calls on behalf of, and at the direction of" the defendant. <u>Id.</u> at 138. The court in <u>Jackson</u> dismissed the complaint, finding that the allegations were insufficient to support an agency relationship necessary to bring a claim of vicarious liability. <u>Id.</u> at 138-39.

Here, Bank has alleged even less than the facts the <u>Jackson</u> court found inadequate to support an agency relationship.  There is no mention of a contract with another entity; there is no allegation that the Call was made "on behalf of" or "caused by" GoHealth.  (<u>See generally</u> Am. Compl.).  <u>See also</u> <u>Bank v. Alliance Health Networks, LLC</u>, No. 15 CV 213, 2015 WL 4645317, at * 1 (E.D.N.Y. Aug. 4, 2015) (dismissing complaint for failure to plead vicarious liability where plaintiff only alleged that calls were "made by, or on behalf of, or with the authorization of" the defendants); <u>Bank v. Philips Elec. North Am. Corp.</u>, No. 14 CV 5312, 2015 WL 1650926, at * 3 (E.D.N.Y. Apr. 14, 2015) (dismissing complaint where there were "no allegations of fact that establish an agency relationship between [defendant] and the authorized dealers" or any control by defendant).

Nor is plaintiff's reliance on an "apparent authority" theory availing.  Apparent authority arises "when a principal, either intentionally or by lack of ordinary care, induces a third party to believe that an individual has been authorized to act on its behalf."  <u>Bank v. Vivint Solar, Inc.</u>, 2019 WL 1306064 at *4 (quoting <u>Highland Capital Mgmt. LP v. Schneider</u>, 607 F.3d 322, 328 (2d Cir. 2010)).  Although plaintiff's brief expounds at length about how the apparent authority theory has been applied in previous cases (see Pl.'s 1st Opp. at 17-23), the Amended Complaint lacks any allegations that would  justify its application in the instant case.  The Amended Complaint is silent as to the plaintiff's belief regarding who authorized the initial Call, or any action taken by GoHealth to induce such a belief.  (<u>See generally</u> Am. Compl.).  Bank does not allege that he believed the Call was authorized or initiated by GoHealth, the employer of his third contact. Instead, the Call could have been made on behalf of or authorized by the entities represented by the prior two individuals with whom he spoke.  There is no allegation in the Complaint that either of these two individuals claimed to be affiliated with GoHealth or that they

identified the entities they represented as being agents of GoHealth.   (Id.)  Bank has also not

alleged that the GoHealth employee with whom plaintiff eventually spoke and corresponded

with, Jared, made any representations of a relationship or purpose underlying the initial Call or

two subsequent transfers.  Cf. Banks v. Pro Custom Solar, 416 F. Supp. 3d 171, 174-75

(E.D.N.Y. 2018) (denying motion to dismiss where defendant's employee stated that the

unconsented prerecorded call was placed by defendant's operating service to promote its goods

and services). In Bank v. Vivint Solar, Inc., the court dismissed plaintiff's complaint, finding that

"the absence of non-conclusory allegations of [] an agency relationship and/or control is a fatal

flaw in each of plaintiff's various theories of vicarious liability."  2019 WL 2280731, at *6.  The

Court specifically found fault with plaintiff's apparent authority arguments, finding, as here, that

"[t]he amended Complaint does not allege that Bank believed that the Prerecorded Call was

placed by an agent of [defendant], let alone that such a belief was reasonable."  Id. at *5.

Similarly, the Court finds that, in this case, the plaintiff has failed to allege plausible facts to

support a claim of vicarious liability, and accordingly respectfully recommends that plaintiff's

TCPA claims be dismissed.[8]


III.    Motion to Dismiss Bank's State Law Claims

        Defendant also moves to dismiss plaintiff's state law claims under the GBL, arguing that

other courts have dismissed plaintiff's state law claims when his TCPA claim failed.  (Def.'s

Mem. at 18 (citing Bank v. Vivint Solar, Inc., 2019 WL 2280731, at *6; Bank v. Alliance Health

---

[8] This conclusion is not in tension with the Court's finding that Bank suffered an injury-in-fact that is fairly traceable to GoHealth.  Plaintiff's burden to plausibly allege liability of the defendant is more stringent than the burden to allege traceability.  See Rothstein v. UBS AG, 708 F.3d 82, 92 (2d Cir. 2013) (concluding that "the test for whether a complaint shows the 'fairly traceable' element of Article III standing imposes a standard lower than proximate cause").  If this was not so, the Court would be deprived of jurisdiction in instances where liability was not successfully pleaded.

Networks, LLC, 2015 WL 4645317, at *1; Bank v. Philips Elec. North Am. Corp., 2015 WL

1650926, at *3)). A court may decline to exercise supplemental jurisdiction over state law

claims if the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C.

§ 1367(c)(3). Here, plaintiff has not alleged diversity of the parties and the amount in

controversy under plaintiff's state law claim does not exceed $75,000. Plaintiff does not appear

to contest that the Court lacks an independent basis to assert jurisdiction over the state law

claims in the event that the federal law claims are dismissed. (See Pl.'s 2nd Opp. (omitting any

discussion of this argument)).

Accordingly, the Court respectfully recommends that the state law claims be dismissed.


IV.     Motion to Strike Certain Allegations from the Second Amended Complaint

Defendant seeks to strike a number of claims in the Second Amended Complaint as an

alternative to dismissal.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a Court "may strike from

a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.

12(f). See Bank v. CreditGuard of America, 2019 WL 1316966, *7-8. Motions to strike material

from a pleading are disfavored, and should generally be denied "unless it can be shown that no

evidence in support of the allegation would be admissible." See Lipsky v. Commonwealth

United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

Defendant argues that a pro se plaintiff may not seek to represent the interests of third

parties, and that therefore plaintiff's class claims should be struck. (Def.'s Mem. at 22-24).

Defendant further argues that plaintiff is not entitled to attorney's fees as a pro se party, and

requests that his fee demand be struck. (Id. at 24). In response, plaintiff argues that it is

premature to strike the class claims and request for attorney's fees.  He points out that he only represents himself at this stage of the litigation, and has not indicated any intent to be appointed counsel for the class.  (Pl.'s 3rd Opp.[9] at 3-6).  In addition, if the case proceeds to class certification, Bank and the putative class members may yet opt to retain counsel.  (Id. at 6).

Finally, defendant asserts that plaintiff's allegations regarding GoHealth VMO and BrokerDialer are impertinent and immaterial and consequently should be struck.  (Def.'s Mem. at 22-24).  Plaintiff argues that these assertions are relevant to his GBL claims in that he alleges their use with respect to his GBL claims.  (Pl.'s 3rd Opp. at 6-7).  He further argues that defendant "does not explain why" the agents described in connection with VMO and BrokerDialer "could not have been involved with the 'call[s] relating to Medicare.'"  (Id. at 7 (quoting Def.'s Mem. at 25)).

        To the extent that defendant seeks to dismiss the plaintiff's class claims and claims for attorney's fees, the Court finds that such a motion is premature at this stage.  As the Court in Bank v. CreditGuard of America noted, "Plaintiff's inability to serve as class counsel is a matter to be addressed at the time of class certification and is irrelevant to the Court's resolution of the instant motion to dismiss."  2019 WL 1316966, *1, n.2 (citing Bank v. R&D Strategic Sols. LLC, No. 12 V 1368, 2013 WL 1171108 (E.D.N.Y. Mar. 20, 2013)).  The same is true of plaintiff's claims for fees.

In addition, the Court respectfully recommends denial of defendant's motion to strike the allegations against GoHealth VMO and BrokerDialer as impertinent and immaterial. Since the Court respectfully recommends dismissal of the plaintiff's claims under Rule 12(b)(6), it need

---

[9] Citations to "Pl.'s 3rd Opp." refer to plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike, filed as an unmarked attachment to plaintiff's response in opposition to defendant's motion to dismiss, ECF No. 28.

not reach the question of whether to strike these allegations and requests for relief on the grounds asserted by defendant.

V.   Plaintiff's Motion for Sanctions

Plaintiff has asked the Court to impose sanctions on defendant's counsel for conduct that plaintiff asserts is in violation of Rule 8.4(d) of the New York Rules of Professional Conduct. (Pl.'s Mem.[10] at 3).  Specifically, plaintiff contends that defendant's references to his history as a repeat TCPA litigant, citations to prior cases in which plaintiff was involved, and the arguments raised by counsel regarding standing, are sanctionable because they were "'obvious attempts'" to prejudice the Court.  (Id. at 4).  Defendant disagrees and contends that the statements are true and accurate and made "appropriately" in a legal brief in support of defendant's position.  (Def.'s Sanctions Mem. at 1-2).  Moreover, defendant asserts that plaintiff cannot demonstrate that the statements were made in bad faith or for an improper purpose.  (Id.)

Rule 8.4 of the New York Rules of Professional Conduct prohibits a lawyer or firm from "engag[ing] in conduct that is prejudicial to the administration of justice."  In order to "prejudice the administration of justice," the attorney's conduct must "at a minimum, pose a substantial risk of seriously impeding cooperation between counsel without justification."  Alexander Interactive Inc. v. Adorama, Inc., No. 12 CV 6608, 2014 WL 4058705, at * 2 (S.D.N.Y. Aug. 14, 2014) (declining to impose sanctions upon an attorney who used "intemperate language," noting that this is matter for the Grievance Committee).

As an initial matter, the Court notes that plaintiff has failed to provide any authority in support of his argument that the Court may impose sanctions against opposing counsel based

---

[10] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum in Support of Sanctions, filed as an unmarked attachment to plaintiff's response in opposition to defendant's motion to dismiss, ECF No. 28.

solely on a violation of the Rules of Professional Conduct.  In <u>Bank v. Caribbean Cruise Line,</u>
<u>Inc.</u>, the court denied a motion by Mr. Bank for similar sanctions in violation of the New York
Rules of Professional Conduct 3.3(a)(1), 8.4(b) and 8.4(d), finding "neither a factual nor a legal
basis for imposing sanctions."  No. 12 CV 584 (E.D.N.Y. June 12, 2012).  Here, the statements
about which plaintiff complains were all made in the context of a pending motion and none of
them evidence the type of conduct that Rule 8.4(d) was designed to deter.  See <u>Alexander</u>
<u>Interactive, Inc. v. Adorama, Inc.</u>, 2014 WL 4058705, at*2 (discussing counsel's use of "vulgar,
insulting, and offensive language toward an adversary").

 Even if Mr. Bank's motion is made pursuant to the Court's inherent powers, he has failed
to carry his burden to show that the "(1) the challenged claim was without a colorable basis and
(2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment
or delay."  <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 194 F.3d 323, 336 (2d Cir. 1999).  Not
only has Mr. Bank failed to even argue that any of the defendant's statements were "without a
colorable basis," but there is no evidence cited to support any claim that the statements were
made in bad faith or for an improper purpose.  To the extent that Bank raises an issue regarding
comments made by defendant relating to his prior cases, other courts have considered Bank's
similar claims that the defendant was making "defamatory misrepresentations" based on his
litigation history and rejected those claims.  See <u>Bank v. CreditGuard of America, Inc.</u>, No. 18
CV 1311, 2020 WL 1516107, at *4 n. 6 (E.D.N.Y. Mar. 30, 2020) (noting that Bank, although
proceeding "pro se" was "an attorney," and "one, the Court also notes of some notoriety in this
Circuit, including as a self-proclaimed 'annoyance' attorney").

 To the extent that plaintiff is arguing that the legal arguments made by defendant in
challenging plaintiff's standing were made in an effort to prejudice the Court against plaintiff,

the Court has reviewed defendant's arguments on standing and find the arguments are supported

by existing law and not interposed for any improper purpose.  In addition, other courts have

rejected Bank's arguments where the defendant has made truthful references to Bank's prior

history and supported those references with citations to precedents.  See, e.g., McCabe v.

Lifetime Entm't Servs., LLC, 761 F. App'x 38, 41 (2d Cir.) (summary order), cert. denied, 140

S. Ct. 81 (2019).

Having thoroughly considered plaintiff's arguments in support of his motion for

sanctions, the Court finds them completely without merit, and respectfully recommends that

plaintiff's motion for sanctions be denied.


VI.    Leave to Amend the Complaint

Finally, plaintiff seeks leave to amend the Complaint in the event that his claims were

dismissed, as the Court recommends.  Although leave to amend "shall be freely given when

justice so requires," Fed. R. Civ. P. 15(a), the decision whether to grant a motion to file an

amended pleading remains within the court's discretion.  See Zahra v. Town of Southhold, 48

F.3d 674, 685 (2d Cir. 1995).  An amendment should not be allowed where there has been bad

faith or dilatory motives, or where the amendment would be futile or would cause undue delay or

undue prejudice to the opposing party.  See Foman v. Davis, 371 U.S. at 182; Local 802, Assoc.

Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998); Zahra v.

Town of Southhold, 48 F.3d at 685; John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22

F.3d 458, 462 (2d Cir. 1994); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993);

Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989).  The party opposing

amendment bears the burden of demonstrating good reason to deny the motion.  See Speedfit, LLC v.

Woodway USA, Inc., No. 13 CV 1276, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015); see also Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (citing Panzella v. Skou, 471 F. Supp. 303, 305 (S.D.N.Y. 1979)).

Defendant argues that it would be futile to allow plaintiff to amend his complaint, because he has failed to state a claim despite having re-pleaded his claims twice already and having filed similar lawsuits in the past. (Def.'s Mem. at 21). Defendant further argues that Bank has acted in bad faith by waiting to file two prior amendments to his Complaint until after GoHealth filed its motion to dismiss. (Id. at 22).

In response, plaintiff argues he did not act in bad faith because one of his amendments was "due to a minor error," and the amendment was stipulated by GoHealth. (Pl.'s 1st Opp. at 25). He further argues that, unlike defendant's cited case where a repeat litigant was denied leave to amend, his litigation history is not comparable and in any event, the Court in that case "relied upon 'the incomprehensible nature of the Complaint.'" (Pl.'s 1st Opp. at 24 (citing Scotto v. New York Univ. Hosp., No. 19 CV 4756, 2019 WL 6307414 (E.D.N.Y. Nov. 25, 2019))).

While normally, the Court would recommend that plaintiff be given an opportunity to amend his Complaint, here plaintiff has already amended the substantive allegations in his Complaint once after reviewing the arguments raised by defendant in support of dismissal.[11] Moreover, plaintiff, having filed numerous TCPA cases in the past, is fully aware of the elements necessary to withstand a motion to dismiss. Indeed, the very problems identified by

---

[11] Defendant served its pre-answer motion to dismiss on January 15, 2020. (ECF No. 15). Plaintiff amended his complaint as of right on February 5, 2020. (ECF No. 16). This amendment contained extensive new factual allegations regarding the Call that forms the basis of this action. Then, plaintiff amended the complaint again by stipulation on February 19, 2020, this time changing only two paragraphs. (ECF No. 18).

this Court with his pleadings in this case have resulted in the dismissal of other cases where the courts identified similar deficiencies.  Unlike in <u>Bank v. Vivint Solar</u>, where plaintiff provided the court with proposed allegations that he sought to add in amending the Complaint, in this <u>case,</u> plaintiff does not offer any arguments to contest defendant's argument that amending the complaint would be futile. He has not suggested that there are any additional facts that, if added to the existing pleading, would cure the deficiencies noted herein.  Had the plaintiff been in possession of additional facts or information that would have allowed him to allege the elements necessary to establish vicarious liability, he should have done so already or at least identified those additional facts in his briefing on the motion to dismiss.  Not only did he not suggest any such additional facts existed, he failed to even respond to defendant's futility argument.

Accordingly, it is respectfully recommended that plaintiff not be given yet a third opportunity to amend his Complaint.

<u>CONCLUSION</u>

In light of the foregoing, the Court respectfully recommends that plaintiff's TCPA claim be dismissed with prejudice for failure to state a claim, and that his GBL claim be dismissed for lack of jurisdiction.  The Court respectfully recommends denial of plaintiff's motion for sanctions.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 8, 2021

                /s/ Cheryl L. Pollak
                Cheryl L. Pollak
                Chief United States Magistrate Judge
                Eastern District of New York