UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

TODD C. BANK,

                       Plaintiff,

          v.

GOHEALTH, LLC,

                     Defendant.

**MEMORANDUM & ORDER**
19-CV-5459 (MKB) (CLP)

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Todd C. Bank, proceeding *pro se*,[1] commenced the above-captioned action

against GoHealth, LLC on September 25, 2019, asserting federal claims under the Telephone

Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and New York General Business Law

Section 399-p ("GBL"). (Compl., Docket Entry No. 1.) Plaintiff filed an Amended Complaint

on February 5, 2020, (Am. Compl., Docket Entry No. 16), and a Second Amended Complaint

("SAC") on February 19, 2020, (SAC, Docket Entry No. 18). On June 5, 2020, Defendant filed

a motion to dismiss, and Plaintiff opposes the motion.[2] Plaintiff also moves for sanctions against

Defendant's counsel for counsel's attempts to prejudice the Court against Plaintiff, (Pl.'s Mem.

in Supp. of Sanctions, annexed to Pl.'s Opp'n as Unmarked Ex., Docket Entry No. 28; Pl.'s

---

[1]  Plaintiff is also a licensed attorney and is therefore not afforded the special latitude
traditionally afforded to *pro se* plaintiffs. *See Bank v. U.S. Dep't of Health & Human Servs.*, 708
F. App'x 43, 44 (2d Cir. 2018) (noting that Plaintiff is "an attorney proceeding *pro se*" and
declining to afford him special latitude).

[2]  (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 24; Def.'s Mem. in Supp. of
Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 25; Pl.'s Opp'n to Def.'s Mot. to Dismiss
Federal Claims ("Pl.'s First Opp'n"), Docket Entry No. 28; Pl.'s Opp'n to Def.'s Mot. to Dismiss
State Claims ("Pl.'s Second Opp'n"), Docket Entry No. 28; Pl.'s Opp'n to Def.'s Mot. to Strike
("Pl.'s Third Opp'n"), Docket Entry No. 28; Def.'s Reply, Docket Entry No. 29.)

Reply, Docket Entry No. 31), and Defendant opposes, (Def.'s Opp'n, Docket Entry No. 28). On June 6, 2020, the Court referred Defendant's motion to dismiss to Chief Magistrate Judge Cheryl L. Pollak for a report and recommendation. (Order dated June 6, 2020.)

By report and recommendation dated March 8, 2021, Judge Pollak recommended that the Court grant Defendant's motion to dismiss and deny Plaintiff's motion for sanctions, and his request to further amend the SAC, (the "R&R"). (R&R, Docket Entry No. 34.) On March 22, 2020, both parties timely filed objections to the R&R. (Pl.'s Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 37; Def.'s Obj. to R&R ("Def.'s Obj."), Docket Entry No. 36.) For the reasons set forth below, the Court adopts the R&R in its entirety, grants Defendant's motion to dismiss, and denies Plaintiff's motion for sanctions and his request to further amend the SAC.[3]

## I.   Background

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

### a.   Factual background

Plaintiff commenced this action against Defendant, alleging violations of the TCPA and section 399-p of the GBL. (SAC ¶ 1.) Plaintiff alleges that Defendant — a limited-liability company organized and existing under the laws of Delaware, with a principal place of business in Chicago, Illinois — operates as "a lead-generation business that obtains and sells consumer leads to health-insurance brokers," using a "a lead-generating program that [Defendant] calls the 'GoHealth Virtual Marketing Organization,' or 'GoHealth VMO.'" (*Id.* ¶¶ 13, 17–18.) The

---

[3] As neither party objects to Judge Pollak's recommendation that the Court deny Plaintiff's motion for sanctions, the Court reviews this recommendation for clear error only. (R&R 28–30; *see generally* Pl.'s Obj.; Def.'s Obj.)

GoHealth VMO includes an "automatic dialing tool," that promises to "call[] prospects and quality leads." (*Id.* ¶ 19.)

On August 19, 2019, Plaintiff "received a telephone call" (the "Call") at a "residential telephone number," which number Plaintiff regularly shares with the subscriber of the telephone number.[4] (*Id.* ¶¶ 20, 26–28.) A "fabricated" caller identification appeared during the Call, which made it appear to be a local number so "that a person who saw that [caller identification information] would be more likely than otherwise to answer the telephone." (*Id.* ¶¶ 22–23.)

When Plaintiff answered the Call, a "robotic" voice responded offering discounts for a "Medicare Supplement," which it also referred to as "Medigap." (*Id.* ¶¶ 29, 30.) After the recording finished, Plaintiff was transferred to "a live person who identified himself as 'Jason,'" and after Plaintiff "told 'Jason' that [he] had Medicare Parts A and B," Plaintiff was transferred to another "live person who identified himself as 'Marc,'" who in turn transferred Plaintiff to a "licensed agent." (*Id.* ¶¶ 35–36, 39.) While Plaintiff was holding for the "licensed agent," a recorded voice indicated that he might be connected to "an agent who is not affiliated with [Defendant]" and that if he wished "to be placed on [Defendant's] do-not-call list" he should call a number which Plaintiff alleges is associated with Defendant. (*Id.* ¶¶ 41–42.)

After Plaintiff was placed on hold, "a live person came onto the line, [who] identified himself as 'Jared,'" and told Plaintiff that he was a licensed agent of Defendant. (*Id.* ¶¶ 45, 54.) Plaintiff provided Jared with his email address and shortly after the call ended, Plaintiff received an email from Jared, to which Plaintiff responded by asking how Jared had obtained Plaintiff's

---

[4] In Plaintiff's response to Defendant's November 22, 2019 letter seeking a pre-motion conference, Plaintiff indicated that "[t]he telephone line at issue belongs to [his] mother" but that he "reside[s] at her home approximately one-third of the time, during which [they] share the telephone line." (Pl.'s Resp. to Def.'s Letter for Pre-Mot. Conf. 2, Docket Entry No. 13.)

telephone number. (*Id.* ¶¶ 53, 60–61.) Jared replied that "[Plaintiff] may have filled something out online." (*Id.* ¶ 64.)

The Call was "not preceded by the written consent of anyone who had the legal authority to provide such consent," (*id.* ¶ 67), and the Call was "made with equipment that was capable of storing telephone numbers to be called and was used, either alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone numbers that were called without the use of an operator," (*id.* ¶ 68).

Plaintiff seeks to represent two separate classes of similarly situated persons — the "Federal Class," which encompasses claims arising "during the period beginning four years prior to the commencement of this action" — and the "New York Class," which encompasses claims arising "during the period beginning three years prior to the commencement of this action." (*Id.* ¶¶ 3–6.) Plaintiff alleges that during the respective class periods, Defendant initiated numerous telephone calls to residential telephones, using a prerecorded voice to encourage the purchase of services provided by Defendant without "the written consent of anyone who had the legal authority to provide such consent." (*Id.* ¶¶ 65–67.)

### b. Report and recommendation

Judge Pollak recommended that the Court (1) grant Defendant's motion to dismiss Plaintiff's TCPA claim for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (2) decline to exercise supplemental jurisdiction over Plaintiff's state law GBL claim, and (3) deny Plaintiff's motion for sanctions. (R&R 32.)

In so finding, Judge Pollak rejected Defendant's argument that Plaintiff lacked Article III standing for failing to allege facts demonstrating an injury-in-fact traceable to Defendant and redressable by a favorable outcome in this case, (R&R 9 (citing Def.'s Mem. 7–10, 18–19)), and

determined that Plaintiff has established injury in fact by alleging "he received an unsolicited robocall," (*id.* at 11). In addition, Judge Pollak concluded that because Plaintiff "was subsequently transferred to a person who identified himself as an agent of [Defendant]" and that "there was an automated message instructing him to call a phone number associated with [Defendant] if he wished to be placed on [Defendant's] do-not-call list," Plaintiff's "injury is traceable to [Defendant] and, if proven, [is] likely . . . redressable . . . [by] a favorable outcome in the case." (*Id.* at 11–12.)

Likewise, Judge Pollak rejected Defendant's argument that Plaintiff lacks statutory standing under the TCPA because he does not qualify as a "called party."[5] (*Id.* at 15 (citing Def.'s Mem. 10–14).) With regard to statutory standing, Judge Pollak concluded that: (1) Plaintiff's allegation that he "regularly shared" the receiving number with the subscriber "satisf[ies] the bare minimum required in order to allege that [P]laintiff has standing under the TCPA," (R&R 17); (2) "[P]laintiff plausibly alleges that no consent for the call was given by anyone," (*id.* at 19); (3) "[w]hether the time that [P]laintiff spent at his mother's house was of a quantity and nature such that he was a 'customary user' appears to be a question of fact that it would be inappropriate to decide at this stage, in light of his allegation that he 'regularly shared' the telephone line with the subscriber," (*id.* at 20); and (4) *Stoops v. Wells Fargo Bank, N.A.*, 197

---

[5] The Second Circuit has held that following the Supreme Court's clarification in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), "the 'statutory standing' appellation is 'misleading' and 'a misnomer,' [the Second Circuit] avoid[s] this appellation going forward." *American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). "The zone-of-interests test 'was formerly called "statutory standing,"' but the Supreme Court has since clarified that it 'in fact is not a standing issue, but simply a question of whether the particular plaintiff "has a cause of action under the statute."'" *Moya v. U.S. Dep't of Homeland Security*, 975 F.3d 120, 130 (2d Cir. 2020) (citing *American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d at 359). Accordingly, the Court adopts the Second Circuit's preferred appellation below, but retains the references to statutory standing in the parties' motion papers and the R&R.

F. Supp. 3d 782, 801 (W.D. Pa. 2016), is distinguishable because, unlike *Stoops*, in which "the plaintiff purchased nearly [forty] cellphones in the hope of receiving a large number of calls in violation of the TCPA," Plaintiff "argues that his mother's phone [number] was not maintained for the sole purpose of filing lawsuits," (*id.* at 19 n.7).

However, Judge Pollak recommended Plaintiff's claim be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as Plaintiff does not contest that he fails to establish direct liability under section 227(b)(1) of the TCPA, (*see* Pl.'s First Opp'n 13–16; Def.'s Mem. 14–16), and Plaintiff also fails to state a plausible claim for vicarious liability, (R&R 24–25). Judge Pollak concluded that the factual allegations in the SAC are insufficient to support an agency relationship and Plaintiff's reliance on apparent authority also fails because he "does not allege that he believed the Call was authorized or initiated by [Defendant], the employer of his third contact" or "that the [Defendant's] employee with whom [P]laintiff eventually spoke and corresponded with, Jared, made any representations of a relationship or purpose underlying the initial Call or two subsequent transfers." (*Id.*)

### c. Plaintiff's objections to the R&R

Plaintiff does not object to the substantive recommendations of the R&R, but requests that if the Court adopts the R&R and dismisses the SAC, it "modify that portion of the [R&R] that recommends that such dismissal be without leave to replead." (Pl.'s Obj. 3.) In support, Plaintiff argues that: (1) the R&R wrongly "relies upon the fact that '[P]laintiff has already amended the substantive allegations in his Complaint once after reviewing the arguments raised by [D]efendant in support of dismissal,'" as the relevant inquiry is not "whether a plaintiff, in amending the complaint, has had the benefit of the *defendant's* point of view, but, rather of the *court's* point of view, which would be the case if the Court were to adopt the [R&R's] finding of

failure to state a claim," (*id.*); (2) the "multiple-transfer scenario" distinguishes the instant case from the prior claims Plaintiff has filed under the TCPA, (*id.* at 2); and (3) because Plaintiff "disagreed with [Defendant's] arguments that [Plaintiff's] statement of a claim was deficient . . . [Plaintiff] did not believe that he was required to 'offer any arguments to contest [D]efendant's argument that amending the [C]omplaint would be futile,'" (*id.*).

### d. Defendant's objections to the R&R

Defendant argues that the R&R "correctly recommends that [Defendant's] [m]otion to [d]ismiss be granted" because Plaintiff fails to sufficiently allege Defendant's direct or vicarious liability for the Call under the TCPA and that Plaintiff's motion for sanctions be denied. (Def.'s Obj. 1.) Defendant argues, however, that the R&R wrongly concludes that: (1) Plaintiff establishes Article III standing, (*id.* at 6–11); (2) Plaintiff demonstrates injury in fact traceable to Defendant or that his injury would be redressable by a favorable outcome in this litigation, (*id.* at 11–13); and (3) Plaintiff maintains a cause of action under the TCPA, (*id.* at 13–17).

With regard to Article III standing, Defendant argues that "the R&R erroneously concludes that Plaintiff has adequately alleged a concrete and particularized injury that is actual or imminent, as opposed to conjectural or hypothetical, and thus sufficient to establish Article III standing." (*Id.* at 1.) In support, Defendant argues that: (1) "[Plaintiff] has no personal privacy interest in a phone that does not belong to him and that is not located in *his home*," (*id.* at 8); (2) "there is no violation of privacy in a call that was not unwanted" and "Plaintiff appears to have been happy to answer the call because it provided him with potential grounds to file yet another TCPA lawsuit," (*id.* at 9); and (3) "the [R&R] erroneously conflates concreteness with particularity," as Plaintiff "brings this lawsuit based upon an alleged harm that is not

particularized to him; rather, he intercepted a call intended for (and, as discussed above, most likely desired by) his mother," (*id.* at 11).

As to injury in fact, Defendant argues that the R&R "erroneously determines that Plaintiff's allegations . . . were sufficient to establish that the injury was traceable to and redressable by [Defendant]." (*Id.* at 1–2.) In support, Defendant maintains that "there is no 'causal nexus' between [Defendant] and the [C]all . . . because [Defendant] did not cause the call to be placed," and it was Plaintiff's responses to the Call that ultimately caused him to be transferred to Defendant. (*Id.* at 12–13.) In addition, Defendant argues that the harm is not redressable by Defendant because "there are no grounds for finding that [Defendant] is capable of preventing future calls." (*Id.* at 13.)

Defendant contends that "in determining that Plaintiff had sufficiently alleged statutory standing under the TCPA, the [R&R] erroneously accepts as true Plaintiff's conclusory statement that '[the Call was] not preceded by the written consent of anyone who had the legal authority to provide such consent,'" (*id.* at 2), and wrongly distinguished *Stoops* from the instant matter, (*id.* at 13–14).

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir.

2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying the clear error standard when no objections to the magistrate judge's report and recommendation were filed).  The clear error standard also applies when a party makes only conclusory or general objections.  Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("[M]erely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

Whether clear error review or *de novo* review applies when an objecting party reiterates the arguments made to the magistrate judge is unclear.  While the Second Circuit has suggested that clear error review is appropriate if a party's objection to a magistrate judge's report and recommendation repeats arguments already presented to and considered by the magistrate judge, *see Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) . . . ."), the Second Circuit has more recently stated that it is "skeptical" that the clear error standard would be appropriate when the objection is based on a previously asserted argument, *see Moss v. Colvin*, 845 F.3d 516, 520 n.2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [the plaintiff] to raise . . .

arguments [on that point] [was] to reiterate them.'" (third and fourth alterations in original) (first

quoting *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748 (S.D.N.Y. Sept. 27, 2013);

and then citing 28 U.S.C. § 636(b)(1))). *See also Harewood v. New York City Dep't of Educ.*,

No. 18-CV-5487, 2021 WL 673476, at *6 (S.D.N.Y. Feb. 22, 2021) ("[W]hen the objections

simply reiterate previous arguments or make only conclusory statements, the court should review

such portions of the report only for clear error." (first citing *Dickerson v. Conway*, No. 08-CV-

8024, 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); and then citing *Kirk v. Burge*, 646 F.

Supp. 2d 534, 538 (S.D.N.Y. 2009))); *Castorina v. Saul*, No. 19-CV-991, 2020 WL 6781078, at

*1 (S.D.N.Y. Nov. 18, 2020) ("While courts in this [d]istrict sometimes state that objections that

'simply reiterate [the] original arguments' merit only clear error review, this rule lacks support in

either 28 U.S.C. § 636(b)(1)(C) or Rule 72(b)(2) of the Federal Rules of Civil Procedure. The

Second Circuit has expressed similar skepticism." (alteration in original) (citations omitted)).

### ii. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or

constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir.

2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St.

Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting

*Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam)

(quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

"'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable

inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that

showing is not made by drawing from the pleadings inferences favorable to the party asserting

it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### iii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b. Unopposed portions of the R&R

No party has objected to the recommendations that the Court: (1) dismiss Plaintiff's TCPA claim for failure to establish Defendant's direct or vicarious liability for the Call, (R&R 20–25); (2) dismiss Plaintiff's state law claims for lack of supplemental jurisdiction, if the Court dismisses the TCPA claim, (*id.* at 25–26); and (3) deny Plaintiff's motion for sanctions, (*id.* at 28–30). The Court has reviewed the unopposed portions of the R&R and, finding no clear error, adopts the recommendations pursuant to 28 U.S.C. § 636(b)(1).

### c. Article III standing

Defendant argues that Plaintiff's allegations fail to demonstrate that he suffered an injury in fact as Plaintiff does not "assert an invasion of *his* privacy interests or that he had any expectation of privacy regarding *his mother's* residential landline," and that this deficiency cannot be resolved as "any purported injury was self-inflicted by [Plaintiff's] decision to answer a phone that does not belong to him." (Def.'s Mem. 8–9.) In addition, Defendant argues that even assuming Plaintiff has sufficiently pleaded a concrete and particularized injury, he fails to allege sufficient facts to establish that the injury is traceable to Defendant and therefore, that any harm could be redressed by a favorable outcome against Defendant. (*Id.* at 9–10.) In support, Defendant argues that because it does not exert control over the third-party that placed the Call, imposing damages on or enjoining Defendant will "not prevent unidentified third parties from placing calls to the residential landline." (*Id.* at 10.)

In response, Plaintiff argues that: (1) "in spending approximately one-third of his time at his mother's residence, during which, discovery would show, he has the authority to treat his mother's telephone line as his own, [he] clearly cannot be deemed to have been acting as a 'mere visitor or houseguest' when he answered [the Call]," (Pl.'s First Opp'n 3); (2) "the fact that the

*prerecorded* material in the Call did not" identify Defendant, does not preclude liability, (*id.* at 12); and (3) imposing damages or injunctive relief on Defendant would provide redress with respect to Defendant's conduct relating to the Call, (*id.* at 13).

To show standing, a plaintiff must establish three things: (1) an "injury in fact — an invasion of a legally protected interest which is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability of the injury "by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted); *see also Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 89 (2d Cir. 2014) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)) (describing the three elements of standing); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[A] plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009))). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

Because the three elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "Thus, '[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court will] presum[e] that general allegations

embrace those specific facts that are necessary to support the claim.'" *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063–64 (D.C. Cir. 2015) (first and third alterations in original) (quoting *Lujan*, 504 U.S. at 561) ("A plaintiff's burden to demonstrate standing grows heavier at each stage of the litigation." (citing *Lujan*, 504 U.S. at 561)); *see also Liu v. U.S. Congress*, 834 F. App'x 600, 602 (2d Cir. 2020) ("To evaluate a motion to dismiss for lack of standing, we ask whether the plaintiff plausibly alleged the existence of each of the three elements."); *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015), *as amended*, (Feb. 2, 2016) ("[T]o withstand a 'facial attack' at the motion-to-dismiss stage, a plaintiff need only plausibly allege facts establishing each constitutional requirement." (citing *Lewis v. Casey*, 518 U.S. 343, 358 (1996))); *Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 11 (D.D.C. 2018) ("[T]o survive a motion to dismiss, [p]laintiffs 'must state a plausible claim that [they have] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits.'" (third alteration in original) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015), *aff'd*, 808 F.3d 905 (D.C. Cir. 2016))).

"[I]t is the obligation of courts in assessing the legal sufficiency of a complaint to construe ambiguities in the manner most favorable to the plaintiff." *Citizens for Responsibility & Ethics in Washington v. Trump*, 971 F.3d 102, 133 (2d Cir. 2020). "In evaluating constitutional standing, courts 'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 650 (S.D.N.Y. 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *see also Bank v. Wolfe*, No. 19-CV-441, 2020 WL 4748320, at *1 (E.D.N.Y. Aug. 17, 2020) ("[W]hen standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining

party.'" (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1988))). In addition, when evaluating standing, courts "must assume that the party asserting federal jurisdiction is correct on the legal merits of his claim, 'that a decision on the merits would be favorable and that the requested relief would be granted.'" *Cutler v. U.S. Dep't of Health & Hum. Servs.*, 797 F.3d 1173, 1179–80 (D.C. Cir. 2015) (quoting *In re Thornburgh*, 869 F.2d 1503, 1522 (D.C. Cir. 1989)); *see also Hassan*, 804 F.3d at 289 (same).

"[A] plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (citing *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000)). "An injury is 'self-inflicted' so as to defeat standing only if 'the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (quoting *St. Pierre*, 208 F.3d at 402); *see also Bandler v. Town of Woodstock*, 832 F. App'x 733, 734, (2d Cir. 2020) ("To establish the traceability requirement of standing, a plaintiff must establish that the injury was not 'self-inflicted' or 'so completely due to the plaintiff's own fault as to break the causal chain.'" (quoting *St. Pierre*, 208 F.3d at 402)). However, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *St. Pierre*, 208 F.3d at 402 (quoting 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.5, at 461 (2d ed. 1984)); *see also Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013) ("Self-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing." (citing *McConnell v. F.E.C.*, 540 U.S. 93, 228 (2003), *overruled on other grounds by Citizens United v. F.E.C.*, 558 U.S. 310 (2010))); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A

plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury.").

### 1. Injury in fact

Plaintiff relies on *Leyse v. Lifetime Entm't* Servs., LLC, 679 F. App'x 44 (2d Cir. 2017),[6] to argue that he satisfies the injury-in-fact requirement under Article III when he received an unsolicited robocall. (Pl.'s First Opp'n 12.)

Defendant argues that there are several reasons why Plaintiff has not alleged injury in fact. First, Defendant contends that Plaintiff's alleged "injury was self-inflicted by virtue of his decision to answer a phone that does not belong to him." (Def.'s Mem. 9.) Second, Defendant argues that Plaintiff's decision to "remain[] on the line for an extended period of time," speaking with multiple people before being transferred to one of Defendant's employees, is not sufficient to establish injury in fact. (Def.'s Obj. 9.) Third, Defendant argues that there is "no violation of privacy" because the Call was not unsolicited and Judge Pollak erred in accepting as true Plaintiff's "unreasonable," "conclusory allegation" that the Call was not preceded by written consent. (*Id.*)

At this stage in the proceeding, where there has been no discovery or evidence submitted by either side, the Court is "constrained not only to accept the truth of the plaintiffs' jurisdictional allegations, but also to construe all reasonable inferences to be drawn from those allegations in plaintiffs' favor." *Connecticut v. Am. Elec. Power Co.*, Inc., 582 F.3d 309, 333 (2d Cir. 2009) (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d

---

[6] In *Leyse*, the Second Circuit held that the consumer suffered a concrete injury sufficient to confer Article III standing where the advertiser "left a prerecorded voicemail message, to which [the plaintiff] later listened, on an answering device in the place where [the plaintiff] resided and to which he had legitimate access." 679 F. App'x 44, 46 (2d Cir. 2017).

Cir. 2006)), *rev'd on other grounds*, 564 U.S. 410 (2011). The Court therefore accepts as true Plaintiff's allegation that he received the Call on a residential telephone number that he "regularly shared" with the subscriber of the number, that a prerecorded advertisement played when Plaintiff answered the Call, and that "the Call[] [was] not preceded by the written consent of anyone who had the legal authority to provide such consent." (SAC ¶¶ 27, 29–30, 67.) Accordingly, the Court finds that the SAC sufficiently alleges injury in fact. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (finding that plaintiffs need not allege any additional harm beyond the receipt of unsolicited text message advertisements to establish a concrete injury cognizable under the TCPA); *see also Fischer v. Verizon New York, Inc.*, No. 18-CV-11628, 2019 WL 226503, at *2 (S.D.N.Y. May 28, 2019) ("Several courts in this district, applying *Leyse*, have similarly held that the receipt of unauthorized, prerecorded phone calls is sufficient to confer standing to bring suit under the TCPA." (first citing *Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835, 847 (S.D.N.Y. 2017); and then citing *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445, 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017))).

## 2. Traceability and redressability

Defendant argues that Judge Pollak erred in finding that Plaintiff's injury was sufficiently traceable to and redressable by Defendant "because Plaintiff alleges (1) he ultimately spoke to [one of Defendant's agents] ([only] after being transferred three times), and (2) the automated message that played immediately before Plaintiff finally spoke to that agent . . . provided [Defendant's] phone number to call to be added to [Defendant's] internal do-not-call list." (Def.'s Obj. 12.) Thus, Defendant disputes the existence of the "causal nexus" between Defendant and the Call because "[Defendant] did not cause the [C]all to be placed. Rather, some unknown third party did." (*Id.* at 12–13.) Defendant argues that the harm is not redressable by

Defendant as "there are no grounds for finding that [Defendant] is capable of preventing future calls" and "forcing [Defendant] to pay statutory damages will not effectively deter third parties from violating the TCPA." (*Id.* at 13.)

Plaintiff argues that the fact that "the prerecorded material in the Call did not include [the name, address, or telephone number of the caller]" does not preclude liability and that although granting damages against and enjoining Defendant would not "prevent unidentified third parties from placing calls to the residential landline," "such damages and injunctive relief would pertain to [Defendant's] conduct relating to the Call[]." (Pl.'s First Opp'n 12–13.)

### A. Traceability

In addition to establishing injury in fact, a plaintiff must sufficiently allege that the injury "is fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. ---, ---, 136 S.Ct. 1540, 1547 (2016). "The traceability requirement for Article III standing means that 'the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.'" *Chevron Corp. v. Donziger*, 833 F.3d 74, 120 (2d Cir. 2016) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013)). "The fact that the defendant's conduct may be only an 'indirect[]' cause is 'not necessarily fatal to standing.'" *Id.* at 121 (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44 (1976)). "A defendant's conduct that injures a plaintiff but does so only after intervening conduct by another person, may suffice for Article III standing." *Id.* (citing *Rothstein*, 708 F.3d at 92.) "The traceability requirement focuses on whether the asserted injury could have been a consequence of the actions of the defendant rather than being attributable to the 'independent' acts of some other person not before the court." *Id.* (citing *Lujan*, 504 U.S. at 560); *see also Connecticut*, 582 F.3d at 345 (explaining that the traceability requirement "ensures that there is a genuine nexus between a plaintiff's

injury and a defendant's alleged . . . conduct, and is in large part designed to ensure that the injury complained of is not the result of the independent action of some third party not before the court" (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161–62 (4th Cir. 2000))).

Plaintiff plausibly alleges that his injury is fairly traceable to Defendant's conduct because Plaintiff was eventually transferred to a licensed agent of Defendant and while Plaintiff was on hold to be transferred to Defendant's agent, an automated message instructed Plaintiff to call a phone number associated with Defendant to be placed on Defendant's do-not-call list. (*See* SAC ¶¶ 29–45.) Plaintiff therefore sufficiently alleges that his harm was indirectly caused by Defendant's conduct, which is sufficient to confer Article III standing, although Judge Pollak ultimately found that the tenuous nature of the alleged causation was inadequate to support vicarious liability. (*See* R&R 20–25); *see also Rothstein*, 708 F.3d at 92 ("[T]he fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause but is not necessarily a basis for finding that the injury is not 'fairly traceable' to the acts of the defendant." (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 n.8 (2d Cir. 2003), *cert. denied*, 540 U.S. 1012 (2003)); *see also Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) ("[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)) (alteration in original)), *cert. denied*, 551 U.S. 1134 (2007).

## B. Redressability

The nature of a redressability inquiry "focuses . . . on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC*

*Servs., Inc.*, 554 U.S. 269, 287 (2008). To satisfy the redressability requirement, a plaintiff must establish that "it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Id.* at 273–74 (internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 560–61); *see also Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 (noting that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (quoting *Lujan*, 504 U.S. at 560–61)); *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("A plaintiff's burden to demonstrate redressability is relatively modest. She need not demonstrate that there is a guarantee that [her] injuries will be redressed by a favorable decision; rather, a plaintiff need only show a substantial likelihood that the relief sought would redress the injury." (alteration in original) (internal quotation marks omitted) (first quoting *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012); and then quoting *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010))); *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 602 (2d Cir. 2016) ("Redressability is not a demand for mathematical certainty." (quoting *Toll Bros. v. Township of Readington*, 555 F.3d 131, 143 (3d Cir. 2009)); *Toll Bros.*, 555 F.3d at 143 ("Redressability is not a demand for mathematical certainty. It is sufficient for the plaintiff to establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'" (quoting *Vt. Agency of Nat. Res.*, 529 U.S. at 771)). The redressability prong does not demand that court-ordered relief completely redress all injury. *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury."); *see also Knight First Amend. Inst.*, 302 F. Supp. 3d at 561 (finding the redressability prong to be met and noting that "any relief provided need not be complete").

To the extent Plaintiff's injury flows from Defendant's conduct, his injury is redressable by Defendant. The fact that Plaintiff's injury may also stem from the conduct of a third party does not undermine Plaintiff's claim that his injury will be partly redressed by imposing statutory damages against Defendant. *See, e.g.*, *Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d. 1036, 1040 (D. Minn. 2016) ("[T]he fact the TCPA provides for statutory damages belies [defendant's] argument that [plaintiff's] injuries are not redressable here." (citing *Cuellar–Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 621 (8th Cir. 2015))).

### d.  Cause of action under the TCPA

Defendant contends that Plaintiff has no cause of action under the TCPA to pursue his claim, as "he fails to plead any facts establishing that he is the 'called party'— namely, that he is either the subscriber or 'customary user' of the phone line that received the call at issue." (Def.'s Mem. 2.) Defendant argues that Judge Pollak erred in "(1) accepting as true Plaintiff's conclusory allegations that (i) he 'regularly shared the Receiving Number with the subscriber;' (ii) [and that] the [Call was] not preceded by the written consent of anyone who had the legal authority to provide such consent; and (2) distinguishing the *Stoops* case without explanation." (Def.'s Obj. 13–14.)

Plaintiff argues that regardless of whether he is a "called party" within the meaning of the statute, he states a cause of action under the TCPA because as a "regular user" of the phone line, he remains within the "protected zone of interest[]." (Pl.'s First Opp'n 2–4 (quoting *Leyse*, 804 F.3d at 326).) In support, Plaintiff claims that he "reside[s] at [the subscriber's] home approximately one-third of the time, during which [he] share[s] the telephone line [with the subscriber]." (Pl.'s Resp. to Def.'s Mot. for Pre-Mot. Conf. 2.) In addition, Plaintiff disputes Defendant's argument that like the plaintiff in *Stoops*, he was "seeking out opportunities to

generate claims by collecting calls that do not belong to [him]," (Def.'s Obj. 17), and argues that *Stoops* is distinguishable because the plaintiff "was found to lack standing not because of how many cases she had brought, but because she had purchased cell phones not to use them in any manner other than to receive TCPA violating calls and thereupon bring cases." (Pl.'s Resp. to Def.'s Obj. 9–10, Docket Entry No. 39.)

"Under the zone-of-interests doctrine, a plaintiff may state a cause of action only when his interests in the litigation 'fall within the zone of interests protected by the law invoked.'" *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 128 (2d Cir. 2020) (quoting *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017)). The zone of interest test "'is not meant to be especially demanding.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Clarke v. Sec. Indus. Ass'n,*479 U.S. 388, 399 (1987)). "The test forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* (quoting *Clarke*, 479 U.S. at 399). "Whether a plaintiff comes within the zone of interests is an issue that requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (internal quotation marks omitted); *see also Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003) (stating that through the zone of interest test, the court "seeks to determine whether . . . the plaintiff is within the class of persons sought to be benefitted by the provision at issue"). The zone of interest test does not require a specific congressional purpose that benefits the plaintiff asserting standing. *Clarke*, 479 U.S. at 399 (stating that "there need be no indication of congressional purpose to benefit the would-be plaintiff").

### 1. A question of facts exists as to whether Plaintiff qualifies as a "called party" under the TCPA

Only "called parties" may state a claim under the TCPA. *See Leyse v. Lifetime Entertainment Servs.*, No. 13-CV-5794, 2015 WL 5837897, at *4 (S.D.N.Y. Sept. 22, 2015), *aff'd*, 679 F. App'x 44 (2d Cir. 2017). In 2015, the Federal Communications Commission ("FCC") clarified that under the TCPA, "the 'called party' is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8000–01 (2015). In *Leyse*, the court denied the defendant's motion for summary judgment, finding the definition of "called party" to include the plaintiff who "lived at the apartment with [the subscriber's] phone line for [thirteen] years, and [had] regularly paid the bill for the telephone line, although he was unable to produce any records confirming that testimony." 2015 WL 5837897, at *4. Similarly, in *Natale v. Arizona Premium Finance Co. Inc.*, the court found that because the cellular phone subscriber shared the phone with the plaintiff "in a common household," the plaintiff qualified as a "called party" under the statute and therefore had standing under the TCPA. No. 17-CV-934, 2021 WL 1062609, at *8 (W.D.N.Y. Mar. 18, 2021). By contrast, the Third Circuit has stated that "a mere houseguest or visitor who picks up the phone would likely fall outside the protected zone of interests." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015). However, "a regular user of the phone line who occupies the residence being called," does retain "the sort of interest in privacy, peace, and quiet that Congress intended to protect," in enacting the TCPA. *Id.*

As Judge Pollak explained, Plaintiff "alleges something less than the facts that courts have previously found to support statutory standing under the TCPA." (R&R 19.) For example,

Plaintiff does not allege that he shared his mother's phone line as a member of a shared plan. *See Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476, 481 & 481 n.7 (E.D.N.Y. 2019) (finding that because plaintiff alleges that "his phone number is part of a family plan subscribed to by his mother," he qualifies as a "non-subscriber customary user of the mobile number"), *vacated on other grounds*, *Facebook, Inc. v. Duguid*, 592 U.S. ---, 141 S. Ct. 1163 (2021); *see Rodriguez v. Premier Bankcard, LLC*, No. 16-CV-2541, 2018 WL 4184742, at *1, *7 (N.D. Ohio Aug. 31, 2018) (finding that the plaintiff qualified as a "called party" under the TCPA because she shared a cellular phone account with the subscriber, even though she did not pay for the phone line). Nor does Plaintiff allege that he "regularly paid the bill for the telephone line" or that, like the Plaintiff in *Leyse*, he resided full-time at his mother's residence. *Leyse*, 2015 WL 5837897, at *4; *see also Natale*, 2021 WL 1062609, at *8 (finding plaintiff who shared the subscriber's cellular phone and household qualified as "called party" under the statute). However, at this stage in the proceeding, the Court must accept as true Plaintiff's allegation that he "regularly shared" his mother's telephone line at the time the Call was made. (SAC ¶ 27.) Whether Plaintiff is more appropriately characterized as a "non-subscribing customary user" of the telephone line or a "mere houseguest," presents a question of fact that the Court cannot decide on a motion to dismiss.

### 2. Plaintiff's status as a serial TCPA litigant does not in itself prevent him from being able to state a TCPA claim

Defendant argues that Plaintiff fails to maintain a cause of action under the TCPA because he is "seeking out opportunities to generate claims by collecting calls that do not belong to [him]." (Def.'s Obj. 17.)

Plaintiff contends that Defendant falsely "conflates the taking of measures to increase the likelihood of violations that would otherwise not exist, as in *Stoops*, with the taking of measures,

after a violation has occurred, in order to present a claim against the proper party." (Pl.'s Resp. to Def.'s Obj. 9–10.)

Courts have denied claims under the statute where a plaintiff maintains a telephone number for the sole purpose of generating TCPA claims. *See Stoops*, 197 F. Supp. 3d at 805 (holding that the "[p]laintiff's interests [were] not within the zone of interests intended to be protected by the TCPA," because [the] plaintiff "purchas[ed] cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages"); *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-CV-5182, 2016 WL 4179150, at *8–16 (N.D. Ill. Aug. 8, 2016) (finding that company which operated a service to help consumers avoid telemarketing by "subscrib[ing] to 'thousands' of honeypot numbers . . . to gather a 'large quantity' of data," fell outside the zone of interests because "instead of being 'unwanted and unwelcome,' robocalls to [plaintiff's numbers] provide the analytical basis on which the [plaintiff company's] service operates").

Plaintiff's status as a serial TCPA litigant does not in itself prevent him from being able to state a TCPA claim, *see Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 367 F. Supp. 3d 93, 115 (S.D.N.Y. 2019), and this case is distinguishable from *Stoops* and *Telephone Science* because Plaintiff alleges that he does not "share[] his mother's telephone line solely to generate TCPA cases (and, as discovery would show, doing so was not even a part of the reason)." (Pl.'s Opp'n 10); *see Bais Yaakov of Spring Valley*, 367 F. Supp. 3d at 115 (distinguishing *Stoops* on grounds that the "record is devoid of any evidence that [p]laintiff set up its fax number in order to receive faxes upon which it might assert TCPA claims"); *see also Morris v. Unitedhealthcare Ins. Co.*, No. 15-CV-638, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016) (distinguishing *Stoops* and *Telephone Science* because there was "no evidence" that the plaintiff maintained its

telephone number "purely for the purpose of filing TCPA lawsuits"); *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-CV-8714, 2016 WL 4770033, at *3 (D.N.J. Sept. 13, 2016) (distinguishing *Stoops* because there was no evidence that the plaintiff maintained its telephone number for the purpose of filing TCPA lawsuits and further concluding that the plaintiff fell within the TCPA's zone of interests).

### e. Leave to amend

Defendant argues that the Court should dismiss the SAC in its entirety with prejudice as Plaintiff "fails to meaningfully respond to [Defendant's] arguments on futility," even though he is "an experienced TCPA litigant who has had two opportunities to re-plead, and who clearly knew any pertinent facts at the time the prior complaints were filed." (Def.'s Obj. 8–9.)

Plaintiff requests leave to amend the SAC so that he may have the "benefit of . . . the court's point of view, . . . [in the event] the Court . . . adopt[s] the [R&R's] finding of failure to state a claim." (Pl.'s Obj. 1.)

Judge Pollak recommended against granting Plaintiff leave to amend, finding that "[P]laintiff has already amended the substantive allegations in his Complaint once after reviewing the arguments raised by [D]efendant in support of dismissal," and "having filed numerous TCPA cases in the past, [Plaintiff] is fully aware of the elements necessary to withstand a motion to dismiss." (R&R 31.) In addition, Judge Pollak concluded that "[h]ad [Plaintiff] been in possession of additional facts or information that would have allowed him to allege the elements necessary to establish vicarious liability, he should have done so already or at least identified those additional facts in his briefing on the motion to dismiss." (*Id.* at 32.)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of

futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second alteration in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

Plaintiff has been twice granted leave to amend his pleadings to correct the deficiencies identified above and twice failed to sufficiently allege facts to support his claim that Defendant should be held vicariously liable for the Call under either an agency or apparent authority theory. (R&R 20–25; *see also* SAC ¶¶ 21–45; Pl.'s First Opp'n 13–23.)  Plaintiff does not dispute that he fails to state a claim for direct liability.  (*See generally* Pl.'s First Opp'n, Pl.'s Second Opp'n, Pl.'s Third Opp'n, Pl.'s Obj., Pl.'s Resp. to Def.'s Obj.)

Judge Pollak found that as an experienced TCPA litigant, Plaintiff "is fully aware of the elements necessary to withstand a motion to dismiss." (R&R 31.)  Moreover, the "problems identified by [Judge Pollack] with [the] pleadings in this case have resulted in the dismissal of other cases where the courts identified similar deficiencies."  (*Id.* at 31–32); *see also Bank v. All. Health Networks, LLC*, No. 15-CV-213, 2015 WL 4645317, at *2 (E.D.N.Y. Aug. 4, 2015) (dismissing the plaintiff's TCPA claim because the plaintiff "allege[d] merely that the calls at issue were made by, or on behalf of, or with the authorization of [the defendants]" as "this allegation, without more, amounted to nothing more than a conclusory recitation of the principle of vicarious liability, and was therefore insufficient to adequately state a claim against one of the defendants").  Indeed, just as in *Vivint Solar, Inc.*, Plaintiff relies on *Bank v. Lifewatch ("Lifewatch I")*, No. 15-CV-2278 (E.D.N.Y. July 10, 2017) and *Bank v. Lifewatch ("Lifewatch*

II"), No. 15-CV-5708 (E.D.N.Y. July 10, 2017), to argue that he sufficiently alleges vicarious liability under a theory of apparent authority. (Pl.'s First Opp'n 17–18.) However, for the same reasons the Court distinguished *Lifewatch I* and *Lifewatch II* in *Vivint Solar*, *Lifewatch I* and *Lifewatch II* are factually distinguishable from this case because Plaintiff does not allege that either of the two individuals he spoke with before ultimately being transferred to Defendant's licensed agent indicated that they had any relationship with Defendant or otherwise provide facts to support vicarious liability, despite having twice amended his complaint. *See Vivint Solar, Inc.*, 2019 WL 1306064, at *4 ("[I]n *Lifewatch I*, the plaintiff alleged that, at the conclusion of a robocall, he was transferred to a live person who stated that the call was made on behalf of the defendant. Similarly, in *Lifewatch II*, the plaintiff alleged that, at the conclusion of the robocalls, the plaintiff was transferred to someone who claimed to work for the defendant.").

Accordingly, "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. Conclusion

For the foregoing reasons, the Court adopts the R&R, grants Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and denies Plaintiff's motion for sanctions and his request to further amend the SAC. The Clerk of Court is respectfully directed to close this case.

Dated: May 11, 2021
      Brooklyn, New York

SO ORDERED:


    s/ MKB
MARGO K. BRODIE
United States District Judge
